**STATE of Missouri ex rel. Kate MADDOX, Relator-Appellant,**

v.

**Dr. L. M. GARNER, Acting Director, Division of Health, Department of Public Health and Welfare, Respondent.**

No. 8979.

Springfield Court of Appeals, Missouri.

Oct. 2, 1970.

Stewart E. Tatum, Joplin, for relator-appellant.

John C. Danforth, Atty. Gen., Louren R. Wood, Asst. Atty. Gen., for respondent.

STONE, Judge.

Relator, Kate Maddox, an applicant for a license to operate a nursing home in Joplin, Missouri [§§ 198.021, 198.031], filed a petition captioned as one for judicial review [§ 536.100; Rule 100.03] of certain (hereinafter-detailed) action, more properly denominated as nonaction, of the Division of Health with respect to her application.[1] Upon motion by respondent, Dr. L. M. Garner, Acting Director of the Division, relator's petition was dismissed and judgment was entered accordingly. Relator appeals.

The material facts, insofar as they are disclosed by the transcript on appeal, which contains only relator's petition, respondent's motion, the judgment of dismissal, and the trial judge's joint letter to counsel of even date therewith (included by agreement of the parties), are as follows. Since 1952, relator had operated a nursing home in Joplin, which had been licensed "subsequent to 1957 and each and every year thereafter . . . through December 21, 1968." About November 25, 1968, relator submitted to respondent "her usual application for license to operate a nursing home" with the annual license fee of $25 [§ 198.031] and thereafter "many times requested respondent to make such investigation and inspection as [was] required" [§ 198.051], which respondent "failed . . . and now refuses to do." About September 9, 1969, respondent informed relator "that it (sic) was not going to act on said application and that said application was going to be 'held off' and returned to [relator] her aforesaid $25 license application fee, and has declined to give the notice and opportunity for hearing on this application, all as is required by Section 198.140 . . . . " The reason assigned by respondent for this course of conduct was, to quote the obfuscating averments of relator's petition, "that Case #61259 in the Circuit Court of Jasper County . . . must be first finalized;

---

1. All statutory references are to RSMo 1969, V.A.M.S., and all references to rules are to the Supreme Court Rules of Civil Procedure, V.A.M.R.

this said case is the prior administrative appeal and is still pending; and that there are some vague and indefinite and minor items on an inspection by respondent in pursuance to the prior case, which was made on or about April, but no notice or hearing was given or set thereon by respondent."

The prayer of relator's petition was that the court "make and enter its order to: Command [respondent] to receive and file [relator's] application for license to operate a nursing home, that he receive the $25 sum heretofore tendered to him as fees . . . that said respondent immediately cause an inspection to be made of [relator's] premises . . . and that he not again deny or refuse to renew said license application aforesaid . . . without full compliance with Section 198.140." [2]

■ *Relator's theory* of the case is that respondent's course of conduct constituted "a final decision in a contested case" [3] [§ 536.100; Rule 100.03]; that she was entitled to judicial review thereof under § 536.140 [Rule 100.07]; and that the venue of the case on such review was properly in the circuit court of Jasper County, Missouri, the county of relator's residence. § 536.110(3); Rule 100.04(a). *Respondent's position* is that there was no "final decision in a contested case," so relator was not entitled to judicial review under § 536.140 [Rule 100.07]; that her petition sounded in mandamus and instituted an action of that character; and that, since the Division of

Health is one of the divisions "within" the Department of Public Health and Welfare [§ 192.010], a state agency required to maintain its office in Jefferson City [§ 191.030], the venue of such action was in Cole County. § 508.010; State ex rel. State Board of Registration for Healing Arts v. Elliott, Mo. (banc), 387 S.W.2d 489 (1); State ex rel. State Tax Com'n v. Walsh, Mo. (banc), 315 S.W.2d 830, 834 (1).

The fragmentary, meager, spare, and (in some respects) enigmatic averments of relator's petition, coupled with the initial importunity of the prayer thereof, i. e., that the court "command" respondent "to receive and file [relator's] application for license . . . .", leave room for doubt as to whether a "contested case" actually was "commenced" before the Division of Health.[4] But so assuming for the purposes of this opinion, we must remain mindful that the right to judicial review under § 536.140 [Rule 100.07] is accorded only to one "who is *aggrieved by a final decision* in a contested case." § 536.100; Rule 100.03. (All emphasis herein is ours.)

Nothing in relator's petition in the instant case indicates that the Division of Health either (a) regarded or handled the matter as a "contested case" or (b) rendered a "final decision" therein. No "number" was assigned to it [§ 536.067, subds. (2) (a), (3) (a)]; no notice of hearing was given and no hearing was held [§ 536.067, subd. (3)]; no evidence was taken [§ 536.-070]; and there was *no decision and order*

---

2. Section 198.140 declares that "[t]he division of health, after notice and opportunity for a hearing to the applicant or licensee, is authorized to deny, suspend, revoke or refuse to renew a license in any case in which it finds there has been a substantial failure to comply with the requirements established under this law" and provides for notice of hearing, the attendance of witnesses and the taking of evidence at such hearing before the director or his authorized representative, "a determination [by the division of health] specifying its findings of fact and conclusions of law," and "a judicial review thereof as provided in sections 536.100 to

536.140 [Rules 100.03 to 100.07]" to be accorded "[a]ny person aggrieved by a final decision of the division of health."

3. " 'Contested case' means a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." § 536.010(3); Rule 100.01(3).

4. A "contested case shall be commenced *by the filing of a writing* by which the party . . . instituting the proceeding seeks such action as by law can be taken by the agency only after opportunity for hearing, . . . ." § 536.063(1).

in writing which included or was accompanied by findings of fact and conclusions of law, as required in all "contested cases." [5]

Section 536.130, subd. 1 [Rule 100.06(a)] requires that: "Within thirty days after the filing of the petition [for judicial review] or within such further time as the court may allow, the record before the agency shall be filed in the reviewing court. Such record shall consist of any one of the following: (1) Such parts of the record, proceedings and evidence before the agency as the parties by written stipulation may agree upon; (2) An agreed statement of the case, agreed to by all parties and approved as correct by the agency; (3) A complete transcript of the entire record, proceedings and evidence before the agency . . . . The decision, order and findings of fact and conclusions of law shall in every case be included."

In the case at bar, no "record before the agency" was filed in circuit court. Relator's counsel here argues that *the record on review consists of a record, that is, the undenied statement that there was no record below—that is the record*, which with the petition for [judicial] review succinctly places the factual situation before the reviewing court." In the case of In re Village of Lone Jack, Mo. (banc), 419 S.W. 2d 87, involving judicial review of a county court order approving a petition for incorporation of the village, a record was filed in the circuit court but it did not include the testimony taken at a hearing before the county court. After noting the above-quoted provisions of Section 536.130 [Rule 100.06], our Supreme Court held that "[t]his record does not meet the requirements of the statute or rule; its deficiency or shortcoming will not permit that review

required by § 536.140" [419 S.W.2d at 90 (1)] and admonished that "[p]arties desiring that their interests be reviewed in accordance with § 536.140 will see to it that the full record necessary for proper review is certified to the initial reviewing court * * *." 419 S.W.2d at 90(2). And in State ex rel. State Board of Registration for Healing Arts v. Elliott, supra, 387 S.W. 2d at 492, we find the statement that "[t]he *provisions of § 536.140, restricting the court in review proceedings to the record made before the agency*, do not apply to the transfer provision of § 536.100." The case at bar was filed and is presented as a review proceeding, not as a transfer proceeding under the statutory provision in the last sentence of Section 536.100.[6] Certainly, "the undenied statement that there was no record below," either standing alone or (as relator's counsel suggests) taken "with the petition for [judicial] review," can neither constitute nor be approved as an acceptable substitute for the record contemplated and required for judicial review. §§ 536.130, 536.140; Rules 100.06, 100.07.

"Review" is defined thusly: "To re-examine judicially. A reconsideration; second view or examination; revision; consideration for purposes of correction. Used especially of the examination of a cause by an appellate court . . . ." Black's Law Dictionary (4th Ed.), p. 1483. "To reexamine judicially." Webster's Third New International Dictionary, p. 1944. "The phrase, 'judicial review,' as used in the sections under consideration [§§ 536.-100 to 536.140], is obviously intended to have a meaning similar to the word 'appeal,' and in Black's, supra [p. 124], it is said that 'an "appeal" is a step in a judicial proceeding, and in legal contemplation there can be no appeal where there has

---

5. "Every decision and order in a contested case shall be in writing, and, . . . the decision, *including orders refusing licenses*, shall include or be accompanied by findings of fact and conclusions of law . . . ." § 536.090.

6. Of course, if the instant case were a transfer proceeding, the venue would have

been in Cole County [State ex rel. State Board of Registration for Healing Arts v. Elliott, Mo. (banc), 387 S.W.2d 489, 492–493, and cases there cited] and it would have been properly dismissed upon respondent's motion, the first ground of which was "improper venue."

been no decision by a judicial tribunal.'" State ex rel. State Board of Registration for Healing Arts v. Elliott, supra, 387 S.W. 2d at 492(2, 3). With no "record before the agency" filed in the circuit court [§ 536.130, subd. 1; Rule 100.06(a)], the circuit judge appropriately commented, at the time of his sustention of respondent's motion to dismiss, that "there is nothing for this court to review."

The essence of relator's pleaded complaint is that the Division informed her it *"was not going to act on* [*her*] *application* [*for a license*] *and that said application was going to be 'held off'* and returned to [relator] her aforesaid $25 license application fee, and has declined to give the notice and opportunity for hearing on this application . . . "—in short, a charge of *nonaction*; and the burden of her earnest supplication is that the court "command" *action*, to wit, that respondent file relator's application for license, receive the fee tendered to him, cause an inspection to be made of her premises [§ 198.051], and thereafter follow the procedure outlined in § 198.140, which provides for notice to an applicant, a hearing upon the application, "a determination [by the Division] specifying its findings of fact and conclusions of law," and a "decision" which "shall become final ten days after it is . . . mailed or served" unless an appeal be taken within that period, and which explicitly states that "[a]ny person *aggrieved by a final decision* of the division of health shall be entitled to a judicial review thereof as provided in sections 536.100 to 536.140, RSMo." For proper disposition of this case, we need not essay a more elaborate or refined definition of "final decision" than that found in Allen v. Crane, Tex.Civ.App., 257 S.W.2d 357, 358(1, 2): "'Final decision' means a decision which leaves nothing open to dispute. So long as matters remain open, unfinished or inconclusive, there is no final decision." We find the conclusion inescapable that instant respondent's conduct was "devoid of finality, an attribute essential to reviewability" [State ex rel. Far-

is v. Eversole, Mo. (banc), 332 S.W.2d 879, 882], that there was no "final decision" of the Division of Health [§ 198.150], and that relator was not a "person . . . aggrieved by a final decision in a contested case" who was "entitled to judicial review thereof." § 536.100; Rule 100.03.

In Morrell v. Harris, Mo., 418 S.W.2d 20, upon which relator particularly relies, "several interesting problems" were suggested by the transcript on appeal but "the only question" briefed and argued by the parties and determined by the court was "whether the proceeding before the board [of education] was a 'contested case' and therefore subject to judicial review." 418 S.W.2d at 21. That case did not reach or rule the critical issues here. However, it may be noted in passing that, on the charges of misconduct against Morrell, the board held a hearing at which testimony was taken and thereafter made a "final decision" by discharging him from his position as Commissioner of School Buildings.

■ "Where [as instant relator asserts] an administrative body erroneously refuses to exercise the power and authority imposed by law, mandamus is the appropriate remedy to compel such a body to proceed and hear the case upon the merits." State ex rel. Pedrolie v. Kirby, 349 Mo. (banc) 1010, 1014, 163 S.W.2d 964, 967(5). See Board of Health of Woburn v. Sousa, 338 Mass. 547, 156 N.E.2d 52, 57(6); Board of County Com'rs of Anne Arundel County v. Buch, 190 Md. 394, 58 A.2d 672, 677(8), 5 A.L.R.2d 569; 52 Am.Jur.2d Mandamus § 163, p. 485; 55 C.J.S. Mandamus § 156 b, p. 294. Relator brought this suit "in the name of the State at the relation of [herself] the interested party" which is "[t]he usual mode of instituting a proceeding in mandamus." England v. Eckley, Mo. (banc), 330 S.W.2d 738, 740(1). More importantly, as her counsel readily agreed in oral argument here, the averments and prayer of relator's petition run along the course of a petition or application for mandamus; and, in considering venue, the peti-

tion should be and is treated as such, for the character of relator's cause of action must be determined from the factual allegations of the pleading without regard to the caption or name assigned by the pleader. State ex rel. Conaway v. Consolidated School Dist. No. 4 of Iron County, Mo. (banc), 417 S.W.2d 657, 659(2, 3). Since the proceeding is not one for "judicial review," the venue provision of § 536.110(3) is not applicable, and respondent's timely motion to dismiss for "improper venue" was properly sustained. §§ 191.030, 508.010; State ex rel. State Board of Registration for Healing Arts v. Elliott, supra, 387 S.W. 2d at 492–493, and cases there cited.

The judgment of dismissal is affirmed.

TITUS, P. J., and HOGAN, J., concur.